IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| JAMES PATRICK ALLEN | § | CASE NO: 06-60121 |
| Debtor(s) | § | |
| | § | CHAPTER 13 |

**MEMORANDUM OPINION
REGARDING SANCTION OF CREDITOR'S ATTORNEYS**

**I.    BACKGROUND**

James Allen ("Debtor") signed a note and deed of trust on November 24, 2004, in the amount of $115,290. The note was eventually assigned to Countrywide Home Loans ("Countrywide"). In a related deed of trust, Debtor gave Countrywide a lien on land located at 513 Danforth Road, Goliad TX (the "Danforth Road Property") to secure the note.

Debtor filed a petition under chapter 13 of the Bankruptcy Code commencing this case on August 1, 2006. On August 15, 2006, Debtor filed bankruptcy schedules (docket # 8) and a chapter 13 plan (docket # 9). The bankruptcy schedules disclose ownership of the Danforth Road Property and disclose Countrywide's lien. The schedules include the following additional information regarding the Danforth Road Property:

> This is not the residence of the debtor. He rents the property to his brother for a monthly fee. Please see the Rental Agreement in debtor's file.

Debtor's chapter 13 plan values Countrywide's collateral at $58,000 and proposes to pay Countrywide 57 payments of $1,128.08 per month for a total of $67,865 to satisfy Countrywide's lien. That stream of payments includes interest at 6.25%.[1]

On August 18, 2006, Countrywide filed proof of claim # 4, valuing its collateral at $58,000 and asserting that the balance due on the loan on the bankruptcy petition date was $127,328.22, of which $12,479.21 was prepetition arrearage. The proof of claim was filed by Countrywide's counsel, Barrett Burke Wilson Castle Daffin & Frappier, L.L.P. ("Barrett Burke").

A.    Objection to Confirmation

On September 15, 2006, Countrywide (through counsel Barrett Burke) filed an objection to confirmation of Debtor's chapter 13 plan (docket # 27). The objection is grossly erroneous, and to anyone familiar with bankruptcy law, the objection is clearly legal nonsense.

---
[1] Debtor's plan was confirmed December 20, 2006.

1. The objection incorrectly alleges that Linda Joy Hamm executed the note. This is obviously incorrect because Ms. Hamm is Debtor's attorney. Debtor signed the note, not his attorney.
2. The objection alleges that the plan proposes not to pay Countrywide its alleged pre-petition arrearages. This objection does not make sense in the context of this case. Debtor's plan proposes to pay the secured claim as determined under Bankruptcy Code § 506(a)(1). Under that provision, the relevant issue is the value of the collateral and the interest rate. Prepetition and postpetition arrearages are irrelevant.[2]
3. The objection alleges that the collateral is Debtor's principal residence. Based on that allegation, Countrywide objects to plan confirmation on the basis that residential loans cannot be modified by a chapter 13 plan.[3]
4. The objection then makes allegations which on the face of the document are at best boilerplate and at worst are simply incomprehensible or baseless in the context of this case. The objection alleges
    a. That the plan fails to provide for payment of Countrywide's secured claim;
    b. That the plan creates an "artificial post petition default";
    c. That the plan shifts the risk of nonpayment to Countrywide by proposing to pay other creditors first;
    d. That Countrywide's "administrative claim" is deferred over more than 36 months;[4]
    e. That the plan impermissibly proposes to pay interest on Countrywide's nondischargeable unsecured claim;[5] and
    f. That the plan does not provide for all disposable income to be paid to the unsecured creditors.[6]

On September 27 (docket # 32) the chapter 13 trustee recommended confirmation of the chapter 13 plan. In doing so, the trustee represented to the Court that, in his opinion, the plan met the requirements for plan confirmation.

On September 28 Debtor responded to Countrywide's objection. Included in that response was a statement that Countrywide had notice "several months prior to the filing of this case" that the collateral was not Debtor's residence. The response also set out the deficiencies that are noted by the Court, above.

---

[2] This objection would make sense if the collateral were Debtor's principal residence. But Countrywide knew, or had reason to know, that the collateral was not Debtor's principal residence.

[3] While that legal assertion is valid if the fact allegation is supported by evidence, (Bankruptcy Code §§ 506, 1322(b)(2)) it is clear that the allegation was made at a time when Countrywide and Barrett Burke knew, or had reason to know, the fact allegation was false.

[4] Countrywide has never asserted an administrative claim.

[5] Countrywide has never asserted that it has a nondischargeable unsecured claim.

[6] While this objection is at least comprehensible, there is no indication that Countrywide's counsel reviewed the bankruptcy schedules or plan or that counsel did any other investigation before filing the objection. There is no indication that the objection was made in good faith after reasonable investigation. Despite three opportunities, Countrywide has failed to present any evidence in support of the objection, or even argue its validity.

      B.      October 3 Hearing

On October 3, 2006, the Court held a hearing on confirmation of Debtor's chapter 13 plan. Countrywide was represented by Mr. Richard Chapman, local counsel, who was not prepared to prosecute Countrywide's objections to confirmation.

Mr. Chapman did argue that the plan could not be confirmed because it purported to modify the rights of a creditor whose collateral allegedly was Debtor's principal residence. Despite the bankruptcy schedules and despite Debtor's response that alleged that Countrywide had notice that the collateral was not Debtor's principal residence, Countrywide continued to assert that contention. In the courtroom, Debtor's counsel responded orally with the same information that she had stated in her pleading: *i.e.* that Countrywide had known for months that the collateral was not Debtor's principal residence. When Debtor's counsel made this statement in open court, local counsel replied that he had been instructed by Barrett Burke to ask for a continuance if Debtor made that contention. Mr. Chapman asked for a continuance to allow Countrywide to get an appraisal of the collateral.

Based on all the facts and circumstances, the Court concludes that Countrywide and Barrett Burke never had a reasonable basis for asserting that the collateral was Debtor's principal residence. While the deed of trust requires Debtor to use the property as his principal residence for the initial loan period, it clearly contemplates alternative use of the property after 1 year, and even sooner if Countrywide agreed otherwise or if there were extenuating circumstances. Debtor contends that Countrywide knew, prior to the filing of the bankruptcy case, that the property was not Debtor's principal residence. Countrywide has never disputed that allegation. And although she did not testify that she knew that the collateral was not Debtor's principal residence, Barrett Burke's representative later testified (as set out more fully below) that the "principal residence" objection was filed by mistake. In short, the Court finds that the "principal residence" allegation in Countrywide's objection was a violation of Rule 9011.

As clear as that violation is, it is even more egregious that Countrywide continued to advocate that position in open court on October 3, notwithstanding Debtor's written response on September 28. Countrywide obviously had considered Debtor's response, knew that the argument had no validity, and was prepared to abandon the argument by asking for a continuance to implement "Plan B", which apparently had not yet been devised. (Since Countrywide had previously filed a proof of claim accepting Debtor's valuation of the collateral, and since Countrywide has never obtained a true appraisal, and since Countrywide subsequently "discovered" that it had an assignment of rents and completely changed its legal theory to rely on that argument instead of actually seeking an appraisal, the Court believes that the request for a continuance was not made in good faith but was intended simply for delay.)

Orally, on the record, the Court stated that Countrywide should scrutinize its position in this case since; if Debtor's allegations were true, it appeared that Countrywide had violated FRBP 9011. The Court gave Countrywide and Barrett Burke clear warning and opportunity to fix what was apparently broken. The Court continued the confirmation hearing to November 14, 2006, for an evidentiary hearing if Countrywide wished to pursue the contention that the collateral was Debtor's principal residence or to present its appraisal evidence. The Court also

advised Debtor's counsel that if she sought Rule 9011 sanctions, she should take appropriate measures to demand withdrawal of the pleading or other amicable resolution.

      C.      Withdrawal of Objection in Response to FRBP 9011

In response to a demand letter from Debtor's counsel, Countrywide withdrew its objection to confirmation (docket # 37 withdrawing docket # 27) on October 25. The Notice of Withdrawal does not recognize that the prior objection was completely wrong; it merely says that the objection is withdrawn because "Debtor amended the Chapter 13 Plan to allow the full amount of $12,479.21 to be paid to Creditor for pre-petition arrearages." That statement is simply false. Debtor has never filed an amended plan.

On November 8, 2006, over a month after the October 3 hearing on plan confirmation (and over a month after the Court's order of continuance to hear Countrywide's evidence or amended position) and only 4 business days prior to the second hearing, Countrywide filed two pleadings. Those pleadings abandoned all prior contentions, announced that Countrywide and Barrett Burke had "discovered" Countrywide's assignment of rents, and completely changed Countrywide's and Barrett Burke's approach to the case. In docket # 38, Countrywide asked for an accounting and turnover of rents, taking the position that the assignment of rents in the deed of trust was an absolute assignment and not a collateral interest. In that pleading, Countrywide alleged that it reviewed the file after the prior hearing and "discovered" that there was an assignment of rents. Second, in docket # 39, Countrywide asserts that since the rents belong to Countrywide, Debtor is not allowed to use them to fund the chapter 13 plan. Both were filed untimely.

      D.      November 14 Hearing

At the continued hearing on November 14, Countrywide again appeared through local Counsel. Countrywide completely abandoned all arguments made in the first objection to confirmation. Local counsel now argued that the rents had been absolutely assigned, not as a security interest but as an absolute present assignment, and therefore Debtor could not use the rents to fund a chapter 13 plan. Countrywide had filed its amended objection to plan confirmation only 4 business days before the continued confirmation hearing. Local rules require an objection to be filed at least 5 business days prior to confirmation. Countrywide had filed no memoranda of authorities and was prepared with no witnesses at the hearing. The Court continued the matter to December 13 because Debtor's counsel had simply not had time to prepare a response.

Countrywide made no attempt to address the Court's concerns addressed orally on the record at the October 3 hearing. The Court issued an order (docket # 48) requiring local counsel Richard Chapman and counsel for Barrett Burke Wilson Castle Daffin & Frappier, LLP to appear on December 13 and show cause why sanctions should not be issued. The Court's order (docket # 48) set out the preceding facts and articulated the issues to which Barrett Burke should respond.

   E.  December 13 Hearing

 The Court received evidence and considered memoranda on the plan confirmation issues. The Court has separately ruled that the "absolute assignment" objection has no merit and the Court issued a memorandum opinion and order confirming the plan. (Docket ## 54, 55.) With respect to the Court's order to show cause why sanctions should not be issued, Ms. Marilee Madan (an attorney with Barrett Burke) appeared and presented the following case:

 Ms. Madan admitted that Barrett Burke's pleadings and initial legal positions are completely at odds with the facts of this case and the files available to Barrett Burke. The essence of the defense was that Barrett Burke strives for efficiency by using computer generated form pleadings and that those computerized procedures caused the problems.

 Ms. Madan admitted that Barrett Burke should have been present at the November 14 hearing.

   1. Ms. Sanov's Testimony

 Felicia Sanov was the attorney with Barrett Burke who was responsible for filing the initial pleadings. She testified that when she received the case she reviewed the file and recognized that the collateral was non-homestead property. Her focus at that time was to determine why the value of the property had dropped so precipitously between the time that the loan was made and the time that the bankruptcy case was filed (approximately 2 years).

    a. Barrett Burke's system for handling cases and filing pleadings

 Files received from clients are "set up", meaning that certain data is entered into the Barrett Burke computer system. The system recognizes certain codes, and from those codes the computer generates legal pleadings. Ms. Sanov testified that someone else in her office simply entered the wrong data in the wrong places and "checked the wrong boxes" in this case; she also testified that she did not correct the errors when she reviewed the file.

 There was no testimony that anyone at Barrett Burke reviews the computer-generated pleadings (with the level of care required by FRBP 9011) before they are filed. It was the Court's sense of the testimony that either there is no review, or else the review is so superficial that it is meaningless.

    b. Barrett Burke's Response to Discovery of the Errors

 Ms. Sanov testified that local counsel contacted her about the Court's concerns articulated at the first hearing. She testified that she reviewed the pleadings and the file and "could not believe the document that was filed under [her] password."

Ms. Sanov testified that she performed the requisite computer commands to cause the computer to generate a withdrawal of the objection, but that "because the system was set up incorrectly, when [she] filed the withdrawal it was done incorrectly." She testified that under the Barrett Burke system, the pleading effecting the withdrawal of the objection was predicated upon what was already in the computer system, which was erroneous. As noted above, the pleading withdrawing the objection was simply false; it stated that Debtor had filed an amended plan that satisfied Countrywide's objection.

Ms. Sanov did not testify whether or not she had read the pleading withdrawing the objection before it was filed under her name. It was the Court's sense of the testimony that either there is no review, or else the review is so superficial that it is meaningless. And there was no hint in this pleading withdrawing the objection that Countrywide intended to file a subsequent objection to confirmation based on an entirely new theory.

The confusing pleading withdrawing the objection to confirmation was the only response to the Court's October 3 concerns (on the record) regarding Barrett Burke's compliance with Rule 9011. Neither Barrett Burke nor Countrywide sought to repair the damage that they had caused, except to file the withdrawal.

      2.   Mr. Thurmond's Testimony regarding his failure to appear

Mr. Walter Thurmond is a senior, supervisory attorney at Barrett Burke. He testified that he became aware of the Rule 9011 issue because he was in Ms. Sanov's office when Ms. Sanov received a letter from Debtor's counsel demanding withdrawal of the first objection to confirmation. Mr. Thurmond told Ms. Sanov he would look into it. Mr. Thurmond contacted Ms. Hamm and discussed the assignment of rents and cash collateral issue and told her that he would withdraw the objection. Mr. Thurmond testified that he thought the withdrawal of the objection settled the 9011 problem. He did not explain why the allegations in the withdrawal of the initial objection were simply false, why the subsequent objection was filed late, or why Countrywide and Barrett Burke were totally unprepared to prosecute the second objection when it first came on for hearing.

## II.   SANCTIONS FOR VIOLATION OF RULE 9011

      A.   Finding of Sanctionable Conduct

Countrywide's first objection to confirmation was gibberish. It had no basis in fact or law and was materially disruptive to the efficient and effective operation of this Court. Countrywide continued (albeit merely by a very brief statement in open court) to prosecute that objection even after receiving Debtor's response which clearly called Barrett Burke's attention to the error. When confronted with the facts, Barrett Burke, through local counsel, asked for a continuance to allow it to get an appraisal, a strategy that was abandoned immediately after the request was granted. Countrywide then filed a pleading that withdrew its objection to confirmation, which pleading included allegations that were simply false. Barrett Burke attorneys either did not read

the computer generated pleadings that they filed with the Court, or else the efforts in that regard were so minimal that they were meaningless.

Under Bankruptcy Rule 9011(b)(1), an attorney who signs, files, or submits to the Court a pleading is certifying that to the best of that attorney's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that the pleading is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. Further, under Bankruptcy Rule 9011(b)(3), an attorney who signs, files, or submits to the Court a pleading is certifying that to the best of that attorney's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions in the pleading have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

Barrett Burke is not adequately investigating the facts that it alleges before it files pleadings. Barrett Burke has also become over reliant on the computer system that generates its pleadings, and its attorneys are allowing their signatures to become affixed to pleadings that they have not adequately reviewed. This did not happen once, but twice, and the second time was after warning from the Court. After the original errors were discovered and the objection had to be withdrawn, yet another pleading was filed without first being reviewed for its accuracy. That is inexcusable.

Barrett Burke has not fulfilled the requirements of Rule 9011 by performing adequate inquiry prior to filing the pleadings and by assuring that the pleadings that it filed were warranted in fact and in law.

In addition, local counsel appeared at hearings when local counsel was not fully informed and when local counsel was not prepared to bind the client or to prosecute the client's case. Bankruptcy Local Rule 1001(b) states that "In addition to these rules, the Local Rules of the District Court, the Administrative Procedures for CM/ECF, and the standing and general orders govern practice in the bankruptcy court." District Local Rule 11.2 states that "The attorney-in-charge is responsible in that action for the party. That individual attorney shall attend all court hearing or send a fully informed attorney with authority to bind the client."

B.      Consideration of the Proper Sanction With Respect to Barrett Burke

On three prior occasions, Barrett Burke has been required to address problems that seem to have similar foundations.

The undersigned judge, within the past two years, required Ms. Mary Daffin to review all files and to report to the Court concerning quality control issues. At the hearing, Ms. Daffin expressed great regret and promised closer control. The Court declined to impose sanctions based on that representation.

In *In re Anderson*, 330 B.R. 180 (Bankr. S.D. Tex. 2005), Judge Bohm criticized Barrett Burke for failing to appear at a hearing and failing to introduce evidence in support of its legal

positions.

In *In re Porcheddu*, 338 B.R. 729 (Bankr. S.D. Tex. 2006), Judge Isgur found that Barrett Burke engaged in a systematic effort to mislead the United States Bankruptcy Court for the Southern District of Texas to shift fees from Barrett Burke's clients to consumer debtors. Here too, Barrett Burke used the empty head and pure heart defense and professed its sincere regret. Judge Isgur ultimately concluded that a sanction of $65,000 was appropriate to deter Barrett Burke's conduct.

Rule 9011(c)(2) states that a sanction must be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Although the Court has concluded that there is sanctionable conduct, after two warnings and a $65,000 monetary sanction the Court is at a loss to determine the appropriate sanction in this case. If the prior warnings and sanction have not worked, what would? To determine that question, the Court will hold a hearing on March 22, 2007, at 9:30 AM in courtroom 400, 515 Rusk, Houston, Texas. Ms. Mary Daffin, managing attorney of the Houston Barrett Burke office, is ordered to appear and to report to the Court what sanctions would deter future repetition of this conduct.

The hearing is held in Houston, instead of Victoria, for the convenience of the Court. Any party in interest who wishes to participate from Victoria may do so by arranging for telephonic or video appearance. Instructions for doing so are available on the Court's website or by calling the Court's courtroom deputy.

C.     Consideration of the Proper Sanction With Respect to Richard Chapman

Mr. Chapman appeared merely as local counsel for Barrett Burke. The Court recognizes that it has been the practice of creditors' counsel practicing statewide to reduce travel expenses and legal fees by arranging for participation by local counsel. The Court does not want to increase litigation expenses but will insist that local counsel be fully informed and prepared at any hearing at which local counsel appears. Local counsel must comply with district court local rule 11.2.

Because the requirement for full participation has not been strictly enforced before, and because the Court hopes that Mr. Chapman now has a much greater appreciation of his responsibilities to the Court, the Court sees no need to impose other sanctions.

SIGNED 01/09/2007.

*Wesley W. Steen*
WESLEY W STEEN
United States Bankruptcy Judge